IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GERARDO ROSENDO VARGAS, JR.,** : | |
|     **Plaintiff,** : | |
| : | |
| v. : | **CIVIL ACTION NO. 24-CV-5228** |
| : | |
| **BERKS COUNTY CHILDREN** : | |
| **YOUTH SERVICES,** *et al.*, : | |
|     **Defendants.** : | |

**MEMORANDUM**

**GALLAGHER, J.**                                                                                           **DECEMBER 2, 2024**

Plaintiff Gerardo Rosendo Vargas, Jr., initiated this *pro se* civil action alleging his rights were violated in a state child dependency matter. Named as Defendants are Berks County Children Youth Services ("CYS") and Rebecca Mill. Vargas seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant Vargas leave to proceed *in forma pauperis* and dismiss his Complaint. He will be given an opportunity to file an amended complaint if he can correct the deficiencies noted by the Court.

**I.        FACTUAL ALLEGATIONS**[1]

The allegations in Vargas's Complaint are brief. He claims that "CYS is attempting to terminate my rights without proper counsel." (Compl. at 3.) He also alleges that "they" violated his due process rights by taking his son from the hospital without a court order. (*Id.*) Vargas further contends that "they" acted in bad faith by recommending services and then using those services against him, have given false statements under oath, and have violated his "right to record public matters in public places." (*Id.*) As relief, Vargas wants his son returned to his

---

[1] The allegations set forth in the Memorandum are taken from Vargas's Complaint (ECF No. 2). The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

care, his parental rights restored, and "an amount given to [him] as deemed fair by the court." (*Id.* at 4.)

## II. STANDARD OF REVIEW

The Court grants Vargas leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

Because Vargas is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at

\*3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

### III.   DISCUSSION

Although Vargas's allegations are undeveloped, it appears that he seeks to assert constitutional claims pursuant to 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Local governments and municipalities are considered persons under § 1983.  *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  Additionally, in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

As pled, Vargas's Complaint fails to allege a plausible constitutional claim.  To the extent Vargas seeks to assert that his Sixth Amendment rights were violated in the dependency proceedings because he was not afforded counsel, such claim fails because the Sixth Amendment

does not apply to civil cases. *Turner v. Rogers*, 564 U.S. 431, 441 (2011).[2] To the extent he seeks to assert due process claims based on alleged violations of his rights during state court dependency matters, such claims are undeveloped. The Fourteenth Amendment's Due Process Clause "prohibits the government from interfering in familial relationships unless the government adheres to the requirements of procedural and substantive due process." *Croft v. Westmoreland Cnty. Children and Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997). To state a claim under § 1983 for a violation of one's procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The United States Supreme Court has recognized that there is a "fundamental liberty interest of natural parents in the care, custody, and management of their child." *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). However, "this liberty interest in familial integrity is limited by the compelling governmental interest in the protection of children." *Croft*, 103 F.3d at 1125.

With respect to a substantive due process claim brought against a child welfare worker, the United States Court of Appeals for the Third Circuit has explained that,

> a substantive due process claim requires "decision-making by a social worker that is so clearly arbitrary . . . [that it] can properly be said to 'shock the conscience.'" [*Miller v. City of Philadelphia*, 174 F.3d 368, 376 (3d Cir.1999)]; *see also Croft v. Westmoreland*

---

[2] Pennsylvania law provides parents a right to counsel in dependency hearings. *See In re J.S.*, 980 A.2d 117, 122 (Pa. Super. Ct. 2009); 42 Pa. C.S. § 6337 ("[A] party is entitled to representation by legal counsel at all stages of any proceedings under this chapter and if he is without financial resources or otherwise unable to employ counsel, to have the court provide counsel for him."). Nonetheless, Vargas has not explained how the named Defendants deprived him of whatever right to counsel he may have had.

4

*Cnty. Children & Youth Servs.*, 103 F.3d 1123, 1124-26 (3d Cir. 1997). In so holding, we observed that "[t]he exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case," because a "higher fault standard is proper when a government official is acting instantaneously and making pressured decisions without the ability to fully consider their risks." *Miller*, 174 F.3d at 375. In such situations, the "standard of culpability" necessary for a child welfare employee's actions to shock the conscience must generally "exceed both negligence and deliberate indifference." *Id.*

*B.S. v. Somerset Cnty.*, 704 F.3d 250, 267-68 (3d Cir. 2013). Thus, to be plausible, a claim related to a social worker removing a child from a parent's custody "requires decision-making by a social worker that is so clearly arbitrary . . . [that it] can properly be said to 'shock the conscience.'" *Id.* at 268. A plaintiff must allege that the government's actions "reach a level of gross negligence or arbitrariness." *Mulholland v. Government Cnty. of Berks, Pa.*, 706 F.3d 227, 241 (3d Cir. 2013).

Here, Vargas alleges that "they" took his son from the hospital without a court order, but fails to explain how his procedural due process rights were otherwise violated. (Compl. at 3.) He further alleges that "they" acted out of bad faith by recommending services and using those services against him, and gave false statements under oath. (*Id.*) A complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Even under a liberal reading of the Complaint, Vargas's allegations simply are far too undeveloped to allege plausibly either a procedural or substantive due process claim against either of the named Defendants. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim for relief.").

### A. Claims Against Berks County CYS

There are other problems with Vargas's Complaint. Vargas names Berks County CYS as a Defendant, which is treated as a municipal entity under *Monell*. *See Hatfield v. Berube*, 714 F.

5

App'x 99, 103 n.1 (3d Cir. 2017) (*per curiam*) (noting "Pennsylvania county offices of children and youth are treated as municipalities for purposes of *Monell*") (citing *Mulholland*, 706 F.3d at 237).  Municipal liability cannot be predicated on a *respondeat superior* basis, meaning that municipalities may not be held liable simply because their employees committed a constitutional violation.  *Monell*, 463 U.S. at 691.  Rather, "under § 1983, local governments are responsible only for 'their *own* illegal acts.'"  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original)).

There are two ways for a § 1983 claim against a municipality to proceed: "[a] plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, or that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice."  *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (internal quotations and citations omitted).  "To satisfy the [*Monell*] pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was."  *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'"  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'"  *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries."  *Id.* (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged.  *Id.*  Bald

allegations of the existence of a policy are not enough to establish the county's liability; there must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378, 386 (1989).

Therefore, even assuming *arguendo* that Vargas plausibly alleged a violation of a constitutional right, to allege a plausible *Monell* claim against CYS, Vargas must specify a Berks County policy or custom, and he must allege an affirmative link between the policy or custom and the violation of his rights. He simply has not done so. There are no allegations in the Complaint to support a conclusion that Vargas's constitutional rights were violated because of a Berk County policy or custom. *See Mulholland*, 706 F.3d at 237 (affirming dismissal of *Monell* claim for failing to plead that a custom or policy that caused a constitutional violation); *see also Miller v. Off. of Child., Youth & Fams. of Allegheny Cnty.*, 605 F. App'x 99, 102 (3d Cir. 2015) (affirming dismissal of claim against agency because plaintiff failed to allege the deprivation of his rights resulted from any official policy or custom of the agency); *Randolph v. Turgeon*, No. 21-316, 2022 WL 22209559, at *5 (M.D. Pa. May 5, 2022) (dismissing *Monell* claim for failure to plead that a custom or policy infringed on her rights), *report and recommendation adopted*, No. 21-316, 2022 WL 22001377 (M.D. Pa. June 9, 2022). Accordingly, Vargas's claims against CYS will be dismissed.

   **B.**  **Claims Against Rebecca Mill**

Additionally, Vargas has not stated any basis for a claim against Rebecca Mill. As the Court noted above, in a § 1983 action the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode*, 845 F.2d at 1207; *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each

Government official, his or her title notwithstanding, is only liable for his or her *own*

misconduct.") (quoting *Iqbal*, 556 U.S. at 677); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir.

2020) ("Personal involvement requires particular 'allegations of personal direction or of actual

knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). Apart from listing Mill in the

caption and list of Defendants, Vargas alleges no facts tying Mill to the acts alleged in the

Complaint. In other words, Vargas has not sufficiently explained what Mill did or did not do

with respect to his alleged constitutional harms. Any claims against Mill will be dismissed.[3]

---

[3] Furthermore, in analyzing the actions of child welfare workers to determine whether a constitutional violation has occurred, courts will consider whether the child welfare worker is entitled to immunity for such actions. In *Ernst v. Child & Youth Servs. of Chester Cnty.*, the Third Circuit held that child welfare workers "are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings" and that this includes "the formulation and presentation of recommendations to the court in the course of such proceedings." 108 F.3d 486, 495 (3d Cir. 1997). The Circuit reasoned that:
> the functions performed by [child welfare workers] in dependency proceedings are closely analogous to the functions performed by prosecutors in criminal proceedings; (2) the public policy considerations that countenance immunity for prosecutors are applicable to child welfare workers performing these functions; and (3) dependency proceedings incorporate important safeguards that protect citizens from unconstitutional actions by child welfare workers.

*Id.* The *Ernst* court further noted in *dicta* that it would be unwilling to accord absolute immunity to "investigative or administrative" actions taken by child welfare workers outside the context of a judicial proceeding. *Id.* at 497 n.7. The Third Circuit subsequently clarified that immunity would apply to investigative actions that are taken as part of an ongoing judicial proceeding for which the child welfare worker serves as an advocate for the state. *See B.S.*, 704 F.3d at 269-70. "The key to the absolute immunity determination is . . . the underlying function that the investigation serves and the role the caseworker occupies in carrying it out." *Id.* at 270.

Actions taken after the initiation of dependency proceedings may also be entitled to absolute immunity. *See generally Sporish v. Cnty. of Delaware, Pa.*, No. 12-6363, 2013 WL 5272832, at *8 (E.D. Pa. Sept. 18, 2013) (holding that agency employees who made phone calls that were arguably outside the dependency proceedings were entitled to immunity for those acts because the phone calls were made to prepare for dependency hearing); *Lowe v. Lancaster Cnty. Child. & Youth Soc. Servs.*, No. 20-1413, 2020 WL 7223416, at *8 (E.D. Pa. Dec. 8, 2020) (holding that caseworkers were absolutely immune on claim that false information was presented in the petition or at the hearing); *Rodriguez v. Montgomery Cnty. Off. of Child. & Youth*, No. 15-6186, 2016 WL 2897470, at *4-5 (E.D. Pa. May 17, 2016) (holding that caseworkers were absolutely immune on claims of making false statements to the Juvenile Court and failing to follow agency policies and procedures in removing the child from mother's custody because

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Vargas leave to proceed *in forma pauperis* and dismiss his Complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Cognizant of Vargas's *pro se* status, the Court will grant him an opportunity to develop his allegations by explaining in an amended complaint the "who, what, where, when and why" of his claims. *See Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019)).[4]

---

alleged conduct "was related to initiating, preparing for, and prosecuting the dependency proceedings).

[4] This Court has an obligation to abstain from considering certain types of cases pursuant to the principles of *Younger v. Harris*, 401 U.S. 37 (1971). "To promote comity between the national and state governments," the *Younger* abstention doctrine "requires federal courts to abstain from deciding cases that would interfere with certain ongoing state proceedings." *Malhan v. Sec'y United States Dep't of State*, 938 F.3d 453, 461 (3d Cir. 2019) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77-78 (2013)). When determining whether *Younger* abstention is proper, a court first must examine the underlying state court litigation to determine whether it falls into one of three categories of cases: (1) criminal prosecutions, (2) civil enforcement proceedings, and (3) civil proceedings involving orders in furtherance of the state courts' judicial function. *See PDX N., Inc. v. Comm'r New Jersey Dep't of Labor & Workforce Dev.*, 978 F.3d 871, 882 (3d Cir. 2020) (internal quotations omitted). Child custody proceedings are civil proceedings that fall within the third category and "are a strong candidate for *Younger* abstention." *Mikhail v. Kahn*, 991 F. Supp.2d 596, 626-28 (E.D. Pa. 2014), *aff'd*, 572 F. App'x 68 (3d Cir. 2014) (*per curiam*); *see also Wattie-Bey v. Att'y Gen.'s Off.*, 424 F. App'x 95, 97 (3d Cir. 2011) (*per curiam*) (affirming application of *Younger* abstention doctrine in child custody context); *Smith v. Harrison*, No. 21-5120, 2022 WL 445757, at *4 (E.D. Pa. Feb. 14, 2022) (abstaining under *Younger* from intervening in ongoing child custody proceedings).

At the second stage, the court must consider three factors articulated by the Supreme Court in *Middlesex Cty. Ethics Comm. v. Garden State Bar Assoc.*, 475 U.S. 434, 432 (1982), whether: (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; and (3) there is an adequate opportunity to raise constitutional challenges in the state proceeding. *See Malhan*, 938 F.3d at 462-64. Because Vargas has not pled any plausible claim, the Court need not address whether *Younger* abstention necessitates that any claims be stayed pending resolution of the state dependency proceedings. However, if Vargas files an amended complaint raising nonconclusory claims, the Court will consider at that time whether the doctrine is applicable.

An appropriate order follows, which contains additional instructions as to amendment.

**BY THE COURT:**

*/s/ John M. Gallagher*
**JOHN M. GALLAGHER, J.**